IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------x
                                        :
MILTON THOMAS, SR.                      :
                                        :
                    Plaintiff,          :
            v.                          :        Bankruptcy No. 04-10175
                                        :
CITY OF PHILADELPHIA                    :
SCHOOL DISTRICT OF PHILA                :
WILLIAM C. MILLER, U.S.                 :
Bankruptcy Trustee                      :        Adversary Docket No. 19-00043
                                        :
                    Defendants.         :
_____ x
```

### THE CITY OF PHILADELPHIA AND THE SCHOOL DISTRICT OF PHILADELPHIA'S MOTION FOR SUMMARY JUDGMENT

Defendants, the City of Philadelphia and the School District of Philadelphia (collectively referred to as the "the City"), by and through their undersigned counsel, hereby move for summary judgment with respect to the Amended Complaint filed by the Plaintiff, Milton Thomas.

As discussed below, the City did not violate the Plaintiff's discharge in his bankruptcy case because the Plaintiff failed to serve the City with his bankruptcy plan and therefore the plan was not binding on the City for lack of notice. Moreover, the City's real estate tax liens for the property at issue were not provided for in the bankruptcy plan and thus passed thru the bankruptcy and remained post-discharge. Alternatively, the City should not be held in contempt, because it was objectively reasonable for the City to rely on this Court's August 15, 2013 decision. Lastly, the Plaintiff's claim for damages is overstated.

The City avers the following in support therein:

## STATEMENT OF UNDISPUTED FACTS

On January 16, 2004, the Plaintiff filed for bankruptcy protection under Chapter 13. Exhibit A (Bankruptcy Docket). On January 20, 2004, the Plaintiff filed his Schedule A, in which he claimed he had an interest in three parcels of real property in Philadelphia: 1) 1618 S. 58th Street ("1618"), 2) 1620 S. 58th Street ("1620"), and 3) 1251 S. Ruby Street ("Ruby Street"). Exhibit B (Schedule A).

On January 20, 2004, the Debtor filed his original plan in which he stated secured creditors would be paid $300/month and unsecured creditors would be paid 1% of their claims. Exhibit C (1/20/2004 Plan). No certificate of service was filed with the plan. Exhibit A (Bankruptcy Docket). Subsequently, the bankruptcy case was dismissed in error and the case was reinstated and re-listed for a confirmation hearing. Id.

On June 17, 2004, the Debtor filed a Motion for a Cramdown seeking to reduce the secured claims as to 1618 and 1620. Id. and Exhibit D (Cramdown Motion). On July 17, 2004, the Debtor filed a Notice of Motion, which he served on the City to which the City did not respond. Exhibit A (Bankruptcy Docket) and Exhibit E (Notice of Motion). On August 26, 2004, the Court entered an Order approving the Cramdown Motion and allowing the City's claims with respect to 1618 in the amount of $6800 and with respect to 1620 in the amount of $5700. Exhibit A (Bankruptcy Docket) and Exhibit F (Cramdown Order).[1]

Also, on June 17, 2004, the Debtor filed an Amended Chapter 13 Plan in which he proposed to pay the Chapter 13 Trustee $212.50/month for sixty months and did not provide for any specific

---

[1] The City was not served with the Cramdown Order. Exhibit G (BNC Notice from Cramdown Order).

payments to the City.  Exhibit H (June 17, 2004 Plan).  The Debtor did not serve the Amended

Plan on the City.  Exhibit H (June 17, 2004 Plan).[2]

On July 17, 2004, the Plaintiff filed Proof of Claim #4-1, on behalf of the City, in the

amount of $18,000 for an unpaid water/sewer bill for 1618 of which he claimed $6,800 was a

secured claim.  Exhibit J (Claim #4-1).  On July 22, 2004, the Plaintiff filed Proof of Claim #5-1

as a secured claim in the amount of $10,000 for an unpaid water/sewer bill for Ruby Street.  Exhibit

K (Claim #5-1).  On August 26, 2004, the City filed Proof of Claim #6-1 as a secured claim in the

amount of $19,196.97 for unpaid water/sewer debt in connection with 1618. Exhibit L (Claim #6-

1).

On September 20, 2004, the Debtor filed a Second Amended Plan in which he promised to

pay the Chapter 13 Trustee $227.46/month for 51 months and did not provide for any specific

payments to the City.  Exhibit A (Bankruptcy Docket) & Exhibit M (September 20, 2004 Plan).

The Second Amended Plan was not served on the City.  Exhibit N (COS, # 59).  On November

10, 2004, the Debtor filed a Third Amended Plan in which he promised to pay the Chapter 13

Trustee $445/month for 49 months and did not provide for any specific payments to the City.  The

Third Amended Plan did provide for payments for Class 2 secured creditors as follows: "all

allowed secured claims secured by a lien which is not crandown (sic) under 11 U.S.C. §

1322(b)(2)" or "all allowed secured claims secured by a lien which has not been claimed fully or

partly as exempt under 11 U.S.C. § 522." Exhibit A (Bankruptcy Docket) & Exhibit O (November

10, 2004 Plan). The Third Amended Plan was not served on the City.  Exhibit P (COS, # 71-1).

On February 22, 2005, the Court entered an order confirming the Third Amended Plan, which was

---

[2] On June 25, 2004, the City was served with a Notice of Rescheduled Confirmation Hearing.  Exhibit I
(BNC Notice).

served on the City.  Exhibit Q (Confirmation Order) & Exhibit R (BNC Notice).  No claims were filed as to 1620 by either the Debtor or the City prior to the confirmation of the Third Amended Plan.  Exhibit S (Claims Register).

On October 30, 2006 (over 20 months after the confirmation of the Third Amended Plan), the City filed Claim #7-1 for real estate taxes for three properties:  BRT #034126000 in the amount of $21,737.38, BRT #034126100 in the amount of $21,651.55 and BRT #511243600 in the amount of $4,556.32.  Exhibit I (Claim #7-1).  BRT #511243600 relates to the Ruby Street property.[3] Claim #7-1 could not have been provided for in the Third Amended Plan due to the timing.  The Plaintiff never filed a Motion to Modify to provide for Claim #7-1 in a subsequent bankruptcy plan.  Exhibit A (Bankruptcy Docket).[4]

On July 31, 2009, the Chapter 13 Trustee issued a Final Report and Account.  Exhibit U (Final Report).  The Final Report states that the City was paid or partially paid on account of  three water/sewer debts: 1) a secured claim paid in the amount of $10,000 as to Ruby Street; 2) a secured claim paid in the amount of $6800 as to 1618; and 3) an unsecured claim that was partially paid in the amount of $3,500.42 out of $12,396.97.[5]  Id.  The Final Report does not reflect any payments for real estate taxes or any payments with respect to 1620.  The Plaintiff received a discharge on

---

[3] While, this is not an issue for summary judgment, thus far the City has been unable to trace the remaining BRT numbers and the BRT numbers do not correspond to the current BRT numbers assigned to 1618 and 1620.

[4] In its 8/15/2013 Opinion, this Court found Claim #7-1 to be a nullity as "Claim No. 7-1 was filed late, well after the claims bar date and the confirmation of the Debtor's chapter 13 plan.  Accordingly, it effectively was treated by the Debtor and the Trustee as a nullity.  I see no reason to treat it otherwise now."  In re Thomas, 497 B.R. 188 at 204 n. 31 (Bankr. E.D. Pa. 2013).

[5] While the Trustee's Final Report does not specify the claim numbers, the City believes the Final Report is referring to Claim #6-1 filed by the City in the amount of $19,196.97, which was bifurcated in a secured portion of $6800, which was paid, and an unsecured claim in the amount of $12,396.97, which was partially paid.

September 3, 2009, and the discharge order was served on the City on September 5, 2009. Exhibit V (Discharge Order) & Exhibit W (Docket No. 130, BNC Notice).

On October 31, 2014, the City, through its outside counsel, GRB Law, filed a Real Estate Tax Lien Petition with the Philadelphia County Court of Common Pleas with respect to 1620. Exhibit X (Phila. CCP Docket No. 1411T0015) and Exhibit Y (2014 Petition for Rule). As part of the Sheriff's Sale Action, the City sought payment of real estate taxes for the years 1984 to 2013 plus expenses for a total balance due of $40,578.90. Exhibit Y (2014 Petition for Rule). The petition included post-petition real estate taxes for 2005 to 2013 in the amount of $11,024.67. Id.

1620 was sold at Sheriff's Sale on July 21, 2015 for the purchase price of $10,100 to Mentor Properties LLC. Exhibit Z (Sheriff's Sale Deed). The deed transferring 1620 was acknowledged on September 16, 2015 and the deed was recorded on September 30, 2015. Id. The City received sale proceeds of $4,487.48 after deductions for Sheriff's costs ($1,469.01), advertising ($379.79), deed recording fees ($257), transfer taxes to the City ($2,630.04) and transfer taxes to the Commonwealth of Pennsylvania ($876.88). Exhibit AA (Sheriff's Distribution Report); Exhibit BB (Trial Exhibit D-1); Exhibit CC (Tr. 7/13/17 Hearing at 27:2 to 31:19).

1618 is still titled in the Plaintiff's name. See Exhibit DD (Deed History Print-Out). There have been two recent Sheriff's Sale actions with respect to 1618: 1) an action filed in 2015 (CCP Docket No. 1510T0588), which was discontinued on April 7, 2016, which included real estate taxes for the periods 1984 to 2015 and 2) an action filed in 2018 (CCP Docket No. 1805T0284), which was stayed on August 17, 2018 and which included real estate taxes for the periods 2005 to 2017 and unpaid water/sewer bills from cycles May 2004 to March 2018. Exhibits EE (2015 State Court Docket), FF (2018 State Court Docket), GG (2015 Petition for Rule) & HH (2018 Petition for Rule).

The Plaintiff admits that he failed to pay post-petition real estate taxes for 1620 prior to it

being sold at Sheriff's Sale.  Exhibit II (Status Hearing Tr., at 20:10–13); Exhibit CC (July 13,

2017 Hearing Tr., at 70:15–23) (Plaintiff admits he still owes real estate taxes for 2005 to 2014).

## PROCEDURAL HISTORY

On January 17, 2013, the Debtor filed a Complaint in the District Court for the Eastern

District of Pennsylvania against the City of Philadelphia, Wachovia Bank, the Philadelphia

Authority for Industrial Development, the School District of Pennsylvania and ARACOR Search

& Abstract Services, Inc.  Exhibit JJ (Complaint).  In his Complaint, the Debtor alleged that a

Sheriff's Sale action brought by Wachovia Bank with respect to Ruby Street violated the automatic

stay in his bankruptcy case.  Id.  Wachovia Bank as well as the City and the School District of

Philadelphia filed Motions to Dismiss.  Exhibit A (Bankruptcy Docket).  On November 19, 2012,

the District Court entered an order transferring the action to Bankruptcy Court.  On August 15,

2013, this Court disposed of the Motions to Dismiss, which it treated as Motions for Summary

Judgment and dismissed Wachovia Bank, the City and the School District of Philadelphia from

the case.  The Court found, in relevant part, that the bankruptcy plan was not enforceable against

the City due to lack of notice ("Bankruptcy Court Decision").  In re Thomas, 497 B.R. at 206.

On July 8, 2015, the Plaintiff commenced a new action in the Eastern District of

Pennsylvania.  The City subsequently moved to dismiss the action and on July 7, 2016, the District

Court entered an order dismissing the action on res judicata grounds in light of the prior

Bankruptcy Court Decision ("First District Court Decision").  Thomas v. City of Philadelphia,

2016 WL 3625661 (E.D. Pa. 2016).

The Plaintiff appealed the First District Court Decision and on March 16, 2017, the Third

Circuit Court of Appeals entered an order vacating the First District Court Decision and remanding

the case to the District Court for further proceedings.  Thomas v. City of Philadelphia, 682 Fed.

Appx. 174 (3d Cir. 2017). The Court found that issue preclusion, and not claims preclusion, was

applicable and because "Thomas did not have a full and fair opportunity to litigate the notice

issue," the Bankruptcy Court Decision was not preclusive.

After being remanded, the District Court held a status hearing on May 9, 2017 and an

evidentiary hearing on July 31, 2017.  In addition, on June 16, 2017, the City filed a Motion for

Judgment on the Pleadings arguing that the District Court lacked subject matter jurisdiction to hear

the dispute between the parties because there was no private right of action for an alleged discharge

injunction pursuant to Section 524 of the Bankruptcy Code.  In its August 21, 2017 decision, the

District Court declined to dismiss the case or transfer it to the Bankruptcy Court due to the lack of

a private right of action and found the City in contempt and awarded the Plaintiff damages in the

amount of $10,100, the amount 1620 sold for at Sheriff's Sale ("Second District Court Decision").

Thomas v. City of Philadelphia, 2017 WL 3593334 (E.D. Pa. 2017).

The Plaintiff appealed the Second District Court Decision to the Third Circuit Court of

Appeals.  On January 3, 2019, the Third Circuit vacated the Second District Court Decision on

grounds that the District Court lacked subject matter jurisdiction to hear the dispute.  Thomas v.

City of Philadelphia, 759 Fed. Appx. 110 (3d Cir. 2019). The District Court subsequently

remanded this matter to the Bankruptcy Court for further proceedings.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, a Court "shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."   The Court must construe all

reasonable inferences in favor of the non-moving party when reviewing a summary judgment

motion. See Tri-M Group, LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011).   Moreover,

"[s]ummary judgment is appropriate only where there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Baloga v. Pittston Area School District,

927 F.3d 742, 751 (3d Cir. 2019)(internal citations omitted).   A genuine dispute exists "if a

reasonable jury could return a verdict for the nonmoving party." "In contrast a fact is material

where its existence or nonexistence might impact the outcome of the suit under the applicable

substantive law." Id. at 752 (internal citations omitted).

The moving party bears the initial burden "to point to the evidence 'which it believes

demonstrate[s] the absence of a genuine issue of material fact,'" and once the movant carries that

burden then the burden shifts to the nonmoving party to "'come forward with specific facts

showing that there is a *genuine issue for trial*' and do more than 'simply show that there is some

metaphysical doubt as to the material facts.'" U.S. v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011).

"If the moving party meets its initial burden, the responding party may not rest on the pleadings,

but must designate specific factual averments through the use of affidavits or other permissible

evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial." In

re Cusato, 485 B.R. 824, 827 (Bankr. E.D. Pa. 2013).

For the reasons discussed in further detail below, there are no material facts that prohibit

the Court from granting the City's motion.

## LEGAL ARGUMENTS

A.     The Plaintiff failed to serve the City with his bankruptcy plans and thus, the City is
not bound by the Third Amended Plan due to lack of notice.

Fed. R. Bankr. P. 3015(d) requires the Plaintiff to serve his bankruptcy plan on all of

creditors.   The City acknowledges that it had notice of Mr. Thomas's bankruptcy case as it was

served with some documents, as identified in the Statement of Undisputed Facts, and filed two

8

proofs of claim. However, it believes it is not bound by the Third Amended Plan, the final confirmed plan, because it was never served with the Third Amended Plan or any other bankruptcy plans.

Courts use a due process standard in order to determine whether appropriate notice was given to creditors.  See In re Borkowski, 446 B.R. 220, 224 (Bankr. W.D. Pa. 2011).  The Third Circuit Court of Appeals has held that "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010). To satisfy due process, notice to creditors in the bankruptcy process "must be of such nature as reasonably to convey the required information . . . ." In re Linkous, 990 F.2d 160, 162 (4th Cir. 1993).  See In re Arnold, 2010 WL 3810862, at *3 (Bankr. N.D.N.Y. 2010) (denying a debtor's motion to modify a plan when the motion was not served on all creditors).

The Third Circuit Court of Appeals has declined "to treat confirmed bankruptcy plans as res judicata with respect to the claims of creditors who did not receive notice that was sufficient under the circumstances—even where adherence to the plain language of the relevant statute would have made the confirmed plan binding on all creditors."  In re Mansaray-Ruffin, 530 F.3d 230, 239 (3d Cir. 2008).

The City anticipates that the Plaintiff will argue that the City had notice of his bankruptcy case and was served with various notices by the Bankruptcy Court.  The City concedes that it had general notice of the bankruptcy.  However, the City did not have notice of the Plaintiff's proposed bankruptcy plans and therefore, lacked an opportunity to object and participate in the confirmation process.  The Third Circuit Court of Appeals in Mansaray-Ruffin discussed its prior case in Harbor

<u>Tank Storage Co.</u>[6] where the creditor had notice of the commencement of the bankruptcy case, but did not receive the required subsequent bankruptcy notices.  The Court stated:

> [W]e have indicated that a creditor's actual knowledge regarding the bankruptcy proceedings does not eliminate our due process concerns . . . . a creditor has every right to assume that he will be sent all the notices to which he is entitled under the [Code].  Thus, we made clear that there are statutory procedural requirements that bear directly on the level of process due to a party in a particular situation.

<u>Id.</u> at 239–240 (internal citation omitted).

In fact, this Court has previously held that the City did not have notice of the Plaintiff's bankruptcy plans and therefore, was not bound by the confirmation process.  <u>See</u> <u>In re Thomas</u>, 497 B.R. at 206 ("I conclude that the Confirmed Plan is not enforceable against the City for lack of notice.")  Thus, the Court must grant the City's summary judgment motion as the City was not bound by the terms of the bankruptcy plan and therefore, did not violate the discharge injunction by selling 1620 at Sheriff's Sale.

B.    The real estate taxes for 1620 were not provided for in the Third Amended Plan and <u>thus, the liens passed thru the bankruptcy and remained post-discharge.</u>

Alternatively, the Court should find the pre-petition real estate tax liens for 1620 passed thru the bankruptcy and remained after discharge and thus, it was appropriate for the City to sell 1620 at Sheriff's Sale to seek payment for those liens.  It is undisputed that no claim for real estate taxes for 1620 was filed prior to the claims bar date.  On October 30, 2006, over 20 months after the confirmation of the Third Amended Plan, the City filed Claim #7-1 for real estate taxes for three properties, which possibly included the real estate taxes for 1620.  Exhibit T (Proof of Claim # 7-1).  Due to the timing, Claim #7-1 was not provided for in the Third Amended Plan.  The

---

[6] 385 F.2d 111, 114-16 (3d Cir. 1967).

Plaintiff never filed a Motion to Modify to provide for Claim #7-1.  Exhibit A (Bankruptcy

Docket).[7]  Lastly, the City was not paid on account of Claim #7-1.  Exhibit U (Trustee's Report).

Section 1328 of the Bankruptcy Code provides for "a discharge of all debts provided for

by the plan or disallowed under section 502 of this title . . ." with certain exceptions, not relevant

here.[8]  "As a general matter, a plan 'provides for' a claim or interest when it acknowledges the

claim or interest and makes explicit provision for its treatment."  Cen-Pen Corp. v. Hanson, 58

F.3d 89, 94 (4th Cir. 1995).  Moreover, the Third Circuit Court of Appeals has held that "valid liens

that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt."

Estate of Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 189 (3d Cir. 1987); Dewsnup

v. Timm, 502 U.S. 410, 417–420 (1992) (finding that an unpaid lien passes thru a bankruptcy

unaffected).

In the case of Ruxton v. City of Philadelphia, 246 B.R. 508, 510 (E.D. Pa. 2000), the City

of Philadelphia failed to file a claim for real estate taxes in the debtor's bankruptcy case, while a

claim for water/sewer debt was filed and the plan was confirmed.  Post-bankruptcy, the City

notified the debtor that the real estate tax lien remained.  The Court held "[a]s Debtor's Amended

Plan made no provision whatsoever for the City's secured claim, said claim passed through the

bankruptcy case unaffected.  This result is mandated by controlling law."  Id. at 512.  Similarly,

---

[7] In its 8/15/2013 Opinion, this Court found Claim #7-1 to be a nullity as "Claim No. 7-1 was filed late, well after the claims bar date and the confirmation of the Debtor's chapter 13 plan.  Accordingly, it effectively was treated by the Debtor and the Trustee as a nullity.  I see no reason to treat it otherwise now."  In re Thomas, 497 B.R. at 204.

[8] However, Section 524(a) of the bankruptcy code only provides for a discharge as to the personal liability of the debtor. 11 U.S.C.A. § 524(a) & (a)(1). "Section 524(a)(2), in short, does not prohibit the holder of an unavoided lien from enforcing it against a debtor in an *in rem* proceeding.  It prohibits only the commencement or continuation of an action to collect debtor's *personal liability* that arose in connection with the lien."  In re Reed, 274 B.R. 155, 158 (Bankr. W.D.Pa. 2002); In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) ("Under § 524(a)(2), a discharge operates as an injunction against a broad array of creditor efforts to collect debts as personal liabilities of the discharged debtor.").

here, the Plaintiff filed a water claim, but no tax claim was provided for in the Third Amended Plan and thus the City's liens should pass through the bankruptcy unaffected.

In addition, there is no requirement for a secured creditor to file a comprehensive proof of claim and thus, a partial claim for a portion of a creditor's secured debt does not result in a discharge of the remaining secured debt for which a claim was never filed.  See In re Woodard, 558 B.R. 711, 721 (E.D. Pa. 2016).

For reasons stated above, the City believes it is not bound by the terms of the Third Amended Plan due to lack of notice, and that the real estate taxes for 1620 passed thru the Third Amended Plan and the City's liens remained post-discharge.  If the Court accepts either of these arguments, the Court should grant the City's summary judgment motion as the bankruptcy discharge did not prevent the Sheriff's Sale of 1620.  However, if the Court declines to accept any of the arguments above, the City raises additional arguments, in the alternative, as to why the Plaintiff was not damaged and/or his damages should be reduced.

**Standard for Discharge Injunction & Contempt**

"It is indisputable that the discharge injunction is enforceable through a contempt motion." In re Traversa, 585 B.R. 215, 222 (Bankr. E.D. Pa. 2018).  "A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995). See also Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) (stating that civil contempt must be proven by clear and convincing evidence).

When the general civil contempt standard is translated into bankruptcy words, the Plaintiff must be able to show the following in order to succeed on a discharge injunction violation claim:

"the debtor must show that (1) a discharge order has been entered (discharging the debt); (2) the defendant was aware of the discharge order; and (3) collection efforts continued nevertheless." Cook v. Camden City Municipal Court/Penn Credit (In re Cook), 527 B.R. 607, 610 n.3 (Bankr. E.D. Pa. 2015).

Courts "enjoy[] wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions." Robin, 28 F.3d at 401.  This Court should "be guided by the principle that sanctions imposed after a finding of civil contempt to remedy past noncompliance with a decree are not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." Hudson Transit Lines, Inc. v. Freund, 509 F. Supp. 1172, 1178 (E.D.N.Y. 1981).

A finding of civil contempt "is measured solely by the 'requirements of full remedial relief.'" U.S. v. City of Miami, 195 F.3d 1292, 1298 (11th Cir. 1999).  "However, a district court may not use the civil contempt power to impose what amounts to a punitive or criminal contempt sanction." Id. at 1298; see also Jove Engineering, Inc. v. Internal Revenue Service (In re Jove Engineering, Inc.), 92 F.3d 1539, 1558 (11th Cir. 1996) ("Sanctions imposed for civil contempt to coerce compliance 'cannot be any greater than necessary to ensure such compliance' and may not be so excessive as to be punitive in nature.").

Thus, if the City is found to be in contempt, any award of damages should be limited to the actual damages caused by the City with respect to the violation of the Court's order.  Quinter v. Volkswagen of America, 676 F.2d 969, 975 (3d Cir. 1982) ("The fine imposed for civil contempt, however, must not exceed the actual damages caused the offended party by a violation of the court's order.").  Moreover, a contempt "fine may be imposed payable to the complainant, but it

must be based upon evidence of complainant's actual loss." <u>McDonald's Corp. v. Victory</u> <u>Investments</u>, 727 F.2d 82, 87 (3d Cir. 1984).

C.    The City should not be held in contempt because it was objectively reasonable for <u>it to rely on the Bankruptcy Court Decision when it decided to sell 1620 at Sheriff's Sale.</u>

On August 15, 2013, the Court found, in relevant part, that the Third Amended Plan was not enforceable against the City due to lack of notice. <u>In re Thomas</u>, 497 B.R. at 206.  The City was aware of this decision at the time it sold 1620 at Sheriff's Sale on July 21, 2015.  It was objectively reasonable for the City to rely on the Bankruptcy Court Decision in finding the Sheriff's Sale to be permitted under the law.

In <u>Taggart v. Lorenzen</u>, the U.S. Supreme Court considered the applicability of civil contempt to a bankruptcy context. 139 S. Ct. 1795 (2019).  The Court held:

> [T]he bankruptcy statutes, however, do not grant courts unlimited authority to hold creditors in civil contempt.  Instead, as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standard in equity practice for determining when a party may be held in civil contempt for violating an injunction.

<u>Id.</u> at 1801.  The Court rejected the application of a strict liability standard when determining when a creditor is liable for a discharge injunction violation.  <u>Id.</u> Instead it applied an objective fair ground of doubt standard and stated "civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." <u>Id.</u> at 1802.  The City believes its decision to sell 1620 at Sheriff's Sale was objectively reasonable based upon the Bankruptcy Court Decision and therefore, the City should not be found in contempt even if the sale of 1620 is ultimately found to violate the discharge injunction.

D.    Alternatively, even if the City's action violated the discharge and it should be held in contempt, the Plaintiff suffered no damages because the City received less than its post-petition <u>debt from the sale.</u>

The Plaintiff admits that he failed to pay post-petition real estate taxes for 1620 prior to it being sold at Sheriff's Sale.  Exhibit II (Status Hearing Tr., at 20:10–13); Exhibit CC (July 13, 2017 Hearing Tr., at 70:15–23) (Plaintiff admits he still owes real estate taxes for 2005 to 2014). Therefore, the City could properly list 1620 for Sheriff's Sale for the unpaid post-petition real estate taxes.

The property located at 1620 was sold at Sheriff's Sale on July 21, 2015 for the purchase price of $10,100 to Mentor Properties LLC. The City received sale proceeds of $4,487.48 after deductions for Sheriff's costs ($1,469.01), advertising ($379.79), deed recording fees ($279), transfer taxes to the City ($2,630.04) and transfer taxes to the Commonwealth of Pennsylvania ($876.88).  Exhibit AA (Sheriff's Distribution Report); Exhibit BB (Trial Exhibit D-1); Exhibit CC (Tr. 7/13/17 Hearing at 27:2–31:19).  Since the City received less than the full amount of its post-petition real estate taxes due on 1620, it does not matter that the Sheriff's Sale technically included the pre-petition real estate taxes as the Plaintiff is in the same place as if the Sheriff's Sale had only included post-petition real estate taxes.  The Court should find the Plaintiff was not damaged by the sale of 1620 and make no damages award even if it finds the City to be in contempt.

E.    Alternatively, if the Court finds the Plaintiff is entitled to damages from the Sheriff's Sale of 1620, the damages should be limited to $10,100, the amount that 1620 sold for at Sheriff's Sale.

Alternatively, if the Court finds the Plaintiff is entitled to damages from the Sheriff's Sale of 1620, the damages should be limited to $10,100, the amount that 1620 sold for at Sheriff's Sale. Pennsylvania law provides that the price at which a property sells at Sheriff's Sale is presumed to be its highest and best price.  <u>See</u> <u>M &T Bank v. ACLI Trading, LLC</u>, 2017 WL 568917 at *6 (Pa.

Super. 2017) ("[I]t is well settled that the price received at a duly advertised public sale is the highest and best price obtainable.").

To the extent, the Plaintiff is using this case to challenge the validity of the Sheriff's Sale with respect to 1620, the time for such a challenge has now run and his request is untimely. 53 P.S. § 7193.3 provides that "[a]ll parties wishing to contest the validity of any sale conducted pursuant to Section 31.2 of this act . . . must file a petition to seeking to overturn the sale or to establish the interest within three months of the acknowledgment of the deed to the premises by the sheriff." The Pennsylvania Commonwealth Court has also held that: "[a]s provided by the MCTLL, all petitions to contest the validity of a tax sale conducted in cities in first class must be filed within three (3) months of the acknowledgment of the deed to the premises by the Sheriff.". City of Philadelphia v. Gregory, 2014 WL 2538537, at *6 (Pa. Cmwlth. 2014).

The Sheriff's Sale deed was acknowledged on September 16, 2015 (Exhibit Z), thus the three-month period would have ended on December 16, 2015, long before the Plaintiff filed his Amended Complaint in this matter.  The Plaintiff can no longer challenge or attempt to set aside the Sheriff's Sale.   If the Court concludes the Plaintiff is entitled to any damages, this Court should conclude that the Sheriff's Sale price of $10,100 reflects the highest and best price at the time 1620 sold.[9]  Because the validity of the Sheriff's Sale cannot now be contested, then the presumption that the price is the highest and best price must be distrubed.

---

[9] Although, any challenge to the Sheriff's Sale and the value of 1620 is untimely, the City will note that the Pennsylvania Supreme Court has stated that price inadequacy that does not rise to level of gross inadequacy "is not a sufficient basis for setting aside a sheriff's sale."  Fidelity Bank v. Pierson, 437 Pa. 541, 544 (Pa. 1970).  The Commonwealth Court in a decision, issued just last month, found a City tax lien sale where the property sold for $1,100 and had been appraised at $30,000 (3% sale vs. appraised value ratio) not to be grossly inadequate and stated "the Property's $1,100 sale price was not grossly inadequate even though it was a small percentage of the Property's $30,000 fair market value, because, given the $35,000 in municipal liens, Hart had no equity in the Property to protect and was not personally responsible for any of the unpaid

F.    Alternatively, if the Court finds the Plaintiff is entitled to contempt damages, Plaintiff's claim for denial of his rental license must be denied because he was not eligible for a rental license due to unpaid post-petition real estate taxes.

Per the Plaintiff's Amended Complaint, Plaintiff appears to argue that the City violated the discharge injunction by denying him a rental license.  The Plaintiff provides no detail about which property he is claiming his license was denied or when the denial happened.   Moreover, the Plaintiff admits that he failed to pay post-petition real estate taxes for 1620 prior to it being sold at Sheriff's Sale.  Exhibit II (Status Hearing Tr., at 20:10–13); Exhibit CC (July 13, 2017 Hearing Tr., at 70:15–23) (Plaintiff admits he still owes real estate taxes for 2005 to 2014).

Phila Code § 9-3902(1)(a)[10] requires landlords to obtain rental licenses: "[t]he owner of any dwelling unit, multiple family dwelling, rooming house, dormitory, hotel, one-family dwelling, two-family dwelling, or rooming unit let for occupancy must obtain a rental license." Exhibit KK (Philadelphia Code Sections).  Philadelphia Administrative Code § A-202.7 permits the City to deny licenses to taxpayers who are not tax-complaint[11]:

> No license or permit required by any provision of Title 4 or by Section 9-3901 et seq. 23.1(9) shall be issued or renewed if the applicant is delinquent in the payment of any City or School District of Philadelphia taxes, charges, fees, rents or claims, or any penalties or fines which have been imposed as a result of a violation of any provision of this code or the technical codes, or any penalties or fines related to the property or the applicant's business for which the applicant is responsible, unless the applicant or owner has entered into an agreement to pay any such delinquency and is abiding by terms of such agreement.

---

municipal liens after the tax sale.  In other words, even if the sheriff sold the Property for its fair market value of $30,000, Hart would have seen no benefit because the municipal liens exceeded the fair market value of the Property." City of Philadelphia v. Hart, ___ A.3d ___, 2020 WL 34313, at *5 (Pa. Cmwlth. 2020).

[10] Prior to a change in the Philadelphia Code in 2015, the requirement that landlords obtain licenses was contained in Phila. Code 4 PM 102.1 and the licenses were called housing inspection licenses instead of rental licenses.  The City is uncertain when the alleged denial happened, but the law has been essentially the same since the Plaintiff's discharge was entered in 2009.

[11] Phila Code § 9-3901(1) makes Subcode A of Title 4 (the Philadelphia Administrative Code) applicable.

Here, the Plaintiff has admitted that he was not tax compliant due to his failure to

pay post-petition real estate taxes and thus, the City had a separate independent ground for

denying Plaintiff's renewal of his rental licenses. Thus, summary judgment must be granted

in favor of the City on the Plaintiff's averment that the City denied him the renewal of his

licenses in violation of the discharge injunction.

G.    Alternatively, if the Court finds the Plaintiff is entitled to contempt damages, Plaintiff is
not entitled to recover lost rental income.

The Plaintiff makes a speculative claim for lost rental income stemming the sheriff's sale

of 1620.[12]  If the Court finds the City liable for damages from the Sheriff's Sale of 1620, the

Plaintiff's damages must be limited to the City's payment of the fair market value of 1620.

The Pennsylvania Supreme Court has held in a case similar to this that where there is an

alleged permanent property loss, the measure of damages is the property's change in fair market

value due to the alleged misconduct:

> In Pennsylvania, the general measure of damages for permanent harm to real
> property is the diminution in market value attributable to the conduct, product, or
> instrumentality giving rise to liability, and in situations in which the harm is
> reparable, damages are assessed according to the lesser of the cost of repair or the
> market value of the affected property.

Pennsylvania Dep't of Gen. Servs. v. U.S. Mineral Prod. Co., 587 Pa. 236, 246, 898 A.2d

590, 596 (2006) (internal citation omitted). When the property loss is total, the damages

should be the fair market value of the property at the time of the loss and should not include

any additional rental income which is already included in the calculation of the fair market

value. In re Trustees of Conneaut Lake Park, Inc., 577 B.R. 474, 485–86 (Bankr. W.D. Pa.

---

[12] Whether 1620 was rented prior to its sale and the amount of the future rents are disputed questions of fact
that are not appropriately decided on summary judgment.

2017) (denying additional compensation for rental income because the "income generated by the structure—and the loss thereof— should also be reflected in its overall fair market value.") In <u>Shawnee Tabernacle Church v. Guideone Insurance</u>, a church sought, in addition to the fair market value of its damaged property, compensation for lost rental income after a daycare tenant vacated the property.  2019 WL 1779829 at *1 (E.D. Pa. 2019).  The insurance company filed a motion for summary judgment seeking to limit its damages to the fair market value of the property.  <u>Id.</u> at *1–*2.  The District Court declined to award separate damages for lost rental income and stated it would grant the insurance company's motion "to the extent it asks me to hold that damages are limited to the diminution of the fair market value of the property, with the understanding that a loss of income potential will be reflected in a proper assessment of such fair market value."  <u>Id.</u> at *3.

Thus, the Court must grant summary judgment on the Plaintiff's request for damages for lost rental income as rental income is not a separately classified measure of damages.

VI.   Plaintiff's claim for mental frustration must be denied as the City is immune from such a <u>claim.</u>

The City does not understand the Debtor's claim of "mental frustration" as this does not appear to be a valid cause of action under Pennsylvania law.  Due to the Debtor's pro se status, the City is construing the Debtor's "mental frustration" claim as a claim for emotional distress damages.

Congress provided for a limited waiver of sovereign immunity as to governmental units.  11 U.S.C. § 106(a). While the Bankruptcy Code allows a court to enter a judgment against a governmental unit and award a "money recovery," the Bankruptcy Code does not abrogate a governmental unit's sovereign immunity as to emotional distress damages.

The First Circuit's decision in <u>In re Rivera Torres</u> provides a very thorough review on this issue. 432 F.3d 20 (1st Cir. 2005). In <u>Torres</u>, the First Circuit Court of Appeals considered the issue of whether the Bankruptcy Code's abrogation of sovereign immunity to allow "money recovery" includes the authority to enter a judgment for damages claimed for emotional distress. <u>Torres</u> involved the violation of a discharge order by the Internal Revenue Service. The court recognized that other circuits took the position that there was no authority "to support the proposition that emotional distress is an appropriate item of damages for civil contempt." <u>Id.</u> at 27 (citing <u>Burd v. Walters</u>, 868 F.2d 665, 670 (4th Cir. 1992) (holding that compensation for emotional distress was not intended as a "device for redressing private injuries").[13] However, the First Circuit did not need to reach the same conclusion. Based on the legislative history of the Bankruptcy Code and the United States Supreme Court's interpretation of the term "money recovery" under the Administrative Procedures Act, <u>id.</u> at 29, the court found that Congress did not intend Section 106(a)(3) to abrogate sovereign immunity to allow emotional distress damages. <u>Id.</u> at 31.

The U.S. Supreme Court has found that a waiver of sovereign immunity must be "unequivocally expressed" by the statutory text. <u>See</u> <u>F.A.A. v. Cooper</u>, 132 S.Ct. 1441, 1444 (2012) (citations omitted). At issue in <u>Cooper</u> was whether the government's waiver in the Privacy Act for "actual damages" included recovery for emotional distress damages. <u>Id.</u> The Court found that any ambiguities in the statute must be construed in favor of upholding sovereign immunity, and that "ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." <u>Id.</u> at 1448 (citations omitted). Although there

---

[13] The City recognizes that while the Third Circuit Court of Appeals has not decided the question of whether emotional distress damages are appropriate contempt damages, this Court has previously found that they are. <u>See</u> <u>In re Meyers</u>, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006).

are no specific "magic words" to waive immunity, the scope of the waiver must be "clearly discernable from the statutory text" using traditional tools of statutory construction. Id. If it is not, the sovereign immunity canon of statutory construction requires that ambiguous language be construed to favor the government. Id.

A waiver of sovereign immunity may subject the government to some categories of damages, but not others. Lane v. Pena, 518 U.S. 187, 192 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver must extend unambiguously to *such* monetary claims.") (emphasis added). As a matter of reading the plain text, "money recovery" cannot be deemed to include emotional distress damages. Torres, 432 F.3d at 29. The Supreme Court requires that a waiver of sovereign immunity be unambiguous and that any ambiguous wording be construed in favor of the sovereign, as discussed at length in Cooper, 566 U.S. 284.

Given that the plain text "money recovery" under Section 106(a) does not reveal the scope of the waiver and is considered ambiguous, principles of statutory construction require that the ambiguity as to a waiver of sovereign immunity must be resolved in favor of the government. As such, this Court should find that the waiver under 106(a) for "money recovery" should be construed to permit pecuniary loss but not to permit recovery for emotional distress.

Absent a waiver of immunity under 106(a), the Plaintiff's claim must proceed through the analysis of the governmental immunity enjoyed by the City. The Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541–64 determines which acts may impose liability upon the City of Philadelphia and what damages are recoverable. The Tort Claims Act establishes certain predicates that plaintiffs must establish as well as nine narrowly defined exceptions to the City's state-created grant of general immunity, into which a plaintiff's cause of action must fall in order to be viable. Mascaro v. Youth Study Center, 523 A.2d 1118 (Pa. 1987) (exceptions to the tort claims act must

be narrowly construed). The nine exceptions to immunity are enumerated in the Tort Claims Act as negligence with respect to (1) vehicles; (2) the City's care of a claimant's personal property; (3) City-owned real property; (4) trees, traffic controls, and street lights; (5) City-owned utilities; (6) streets; (7) sidewalks, (8) City-controlled animals, and (9) sexual abuse. 42 Pa. C.S. § 8542.

Assuming for purposes of the Motion for Summary Judgment that, in the light most favorable to the Plaintiff, the Plaintiff suffered from some sort of unknown emotional duress, the City's conduct is not delineated in any of the strictly construed (*Mascaro*) exceptions to the grant of general immunity conferred upon the City by the state's Tort Claims Act. As such, this Court should find that the City is not liable for damages for emotional distress.

WHEREFORE, the City respectfully request that this Honorable Court GRANT the City's Motion for Summary Judgment for the reasons discussed above.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: February 10, 2020                    By:    */s/ Pamela Elchert Thurmond*
                                            PAMELA ELCHERT THURMOND
                                            Deputy City Solicitor
                                            PA Attorney I.D. 202054
                                            Attorney for the City of Philadelphia
                                            City of Philadelphia Law Department
                                            Municipal Services Building
                                            1401 JFK Boulevard, 5th Floor
                                            Philadelphia, PA  19102-1595
                                            215-686-0508 (phone)
                                            215-686-0588 (facsimile)
                                            Email: Pamela.Thurmond@phila.gov