## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: MILTON THOMAS, | : | Chapter 13 |
| | : | |
| Debtor. | : | Bky. No. 04-10175 ELF |
| | : | |
| | : | |
| MILTON THOMAS, | : | |
| | : | |
| Plaintiff, | : | Adv. No. 19-043 ELF |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In 2013, in Adv. No. 13-29 ("the Prior Adversary"), involving the same parties who are

presently before the court, I issued an Opinion that began as follows:

> It is the hope of every chapter 13 bankruptcy debtor that the completion of his or
> her chapter 13 plan will solve, once and for all, the debt problems that drove the
> debtor into bankruptcy. Unfortunately, it does not always work out that way.

In re Thomas, 497 B.R. 188, 190 (Bankr. E.D. Pa. 2013) ("Thomas I").

The adversary proceeding now before the court ("the Present Adversary") is further

evidence that completion of a chapter 13 plan does not always resolve the underlying disputes

between a debtor and his or her creditors.

1

The Present Adversary represents the Debtor's continued quest to hold the City of Philadelphia (the "City") liable for what he claims were unlawful, post-bankruptcy collection actions against him and his property.[1]

In Thomas I, the Debtor asserted that, after completion of his chapter 13 case, the City violated the terms of his confirmed plan and the automatic stay in connection with one (1) of the three (3) properties he owned when the bankruptcy case was commenced.  Following a hearing, I dismissed the Debtor's claims against the City and other defendants.

The Debtor has returned to this court (after two (2) trips to both the U.S. District Court ("the District Court") and the Third Circuit Court of Appeals) with the same essential complaint raised in Thomas I  –  that the City harmed him by pursuing its claims post-discharge.  This time, the Debtor's attack is based on his contention that the City violated the discharge injunction through its post-bankruptcy collection actions.  And, his present complaint relates to the two (2) other properties he owned when he filed this bankruptcy case in 2004.

Before the court is the City's Motion for Summary Judgment ("the Motion").

After consideration of the Motion and the Debtor's response, I will grant the Motion on the following grounds:

- with respect to the first of the two (2) properties involved, no violation of the discharge injunction occurred because the City's liens passed through the bankruptcy unaffected, leaving the City free to enforce its lien rights under applicable nonbankruptcy law;

- with respect to the second property, while the Debtor's confirmed plan purported to avoid the City's prepetition liens, the plan did not bind the City due to the Debtor's failure to provide the City with adequate notice of his chapter 13 plan and, in any event, under the legal standards that must be satisfied to hold a party

---

[1]     The Debtor also named the School District of Philadelphia as a defendant in the Present Adversary.  In this Memorandum, I will refer to the City and the School District collectively as "the City."

The third defendant named by the Debtor, the chapter 13 trustee, William C. Miller ("the Trustee") was dismissed on the Trustee's motion on October 31, 2019.  (Adv. No. 19-43, Doc. # 15).

in contempt, the City had an objectively reasonable basis to believe that its
conduct was permissible and therefore, cannot be held in contempt.


# II.  PROCEDURAL AND FACTUAL HISTORY

The procedural and factual history leading up to the present adversary proceeding is

lengthy.  To place the present matter in its proper context, it is nevertheless necessary to review

that history, particularly the administration of this bankruptcy case, in some detail.


## A.  The Debtor's 2004 Chapter 13 Bankruptcy Case

The Debtor filed this chapter 13 bankruptcy case, acting *pro se*, on January 6, 2004 –

more than *sixteen years* ago.[2]  The bankruptcy judge originally assigned to the 2004 case, the

Hon. Diane W. Sigmund, has since retired.[3]

At the outset, it is worth mentioning that, during the relevant time periods in the

administration of the bankruptcy case, the City's counsel did not enter an appearance on the main

case docket and therefore, did not receive electronic service of any documents filed on the docket

through the court's CM/ECF system.

---

[2]     The Debtor filed four (4) bankruptcies prior to the 2004 case, all before (now retired) Judge
Bruce I. Fox: Bky. Nos. 88-12201, 92-15806, 93-15165, and 95-15997.


[3]     On February 27, 2009, upon Judge Sigmund's retirement, the bankruptcy case was reassigned to
the undersigned Judge.  In September 2009, the court entered the Debtor's chapter 13 discharge order and
closed the case.  The court reopened the Debtor's case on December 21, 2012, as explained in the text
below.

### 1. the Debtor's bankruptcy schedules

The Debtor's Schedule A disclosed that he owned three (3) properties (the "Properties").

All of the Properties are in Philadelphia:

- 1618 South 58th St. ("1618 S. 58th");

- 1620 South 58th St. ("1620 S. 58th");

- 1251 South Ruby St. ("Ruby St.").

In Schedule D, the Debtor disclosed that Ruby Street was subject to secured claims held

by the City of approximately $10,000.00 and that each of the other two (2) properties were

subject to secured claims of $18,000.00.

The Debtor listed no other secured creditors.


### 2. proofs of claim

The City did not file any proofs of claim prior to the expiration of the June 6, 2004

deadline for filing government claims.

On July 17 and 24, 2004, after the June 6th deadline, the Debtor filed two (2) proofs of

claim on behalf of the City for unpaid, prepetition water and sewer bills:

- Proof of Claim #4 for $18,000.00, secured by 1618 S. 58th; and

- Proof of Claim #5 for $10,000.00, secured by Ruby Street.

Notably, neither the City nor the Debtor filed a proof of claim on account of 1620 S. 58th

prior to confirmation.[4]

---

[4]     Inexplicably, on October 30, 2006 – almost three (3) years after the commencement of the case
and almost two (2) years after confirmation of the Debtor's chapter 13 plan – the City filed Claim # 7.
Claim # 7 is a secured claim in the amount of $47,925.25 based on unpaid net profits taxes and certain
real estate taxes.  It is not possible to determine which properties secure the claim from the face of the
proof of claim.  In any event, it does not appear that either the Debtor or the City took any further action
during the pendency of the bankruptcy case to address this proof of claim. For purposes of the Present
Adversary, it can be ignored.

On June 17, 2004, (even before he filed the proofs of claim on the City's behalf), the Debtor filed what he styled as a Motion to Cramdown ("the Cramdown Motion").   Therein, the Debtor asserted that the City's claims against 1618 S. 58th and 1620 S. 58th exceeded the value of those properties, and requested that the City's secured claims be reduced to value of the collateral. (Bky. No. 04-10175, Doc. # 36). The Debtor filed a certification stating that he served the City with the Cramdown Motion at the "Municipal Services Building" in Philadelphia.  The City did not respond to the Cramdown Motion, which the court granted on August 26, 2004.

The order granting the Cramdown Motion ("the Cramdown Order"), handwritten by Judge Sigmund over the proposed order submitted by the Debtor, allowed the City of Philadelphia's claims as follows:

(1) secured claim of $6,800 with respect to 1618 S. 58th St., balance unsecured;[5] and

(2) secured claim of $5,700 with respect to 1620 S. 58th St., balance unsecured.

(Bky. No. 04-10175, Doc. # 54).  The City was never served with the Cramdown Order. (See Bky. No. 04-10175, Doc # 55).

### 3.  chapter 13 plans, confirmation and the Trustee's Final Report

The Debtor filed his first proposed chapter 13 plan in January 2004 and filed three (3) amended plans between June and November 2004.  Significantly, the Debtor did not serve any of his proposed plans on the City.

---

[5]      Proof of Claim No. 4, filed by the Debtor on behalf of the City, was in the total amount of $18,000.00.  Therefore, the Cramdown Order resulted in an allowed unsecured claim in favor of the City of $11,200.00.

The court confirmed the Debtor's Third Amended Chapter 13 Plan on February 22, 2005

("the Confirmed Plan"). The Confirmed Plan defined "Class 2" as "[a]ll allowed secured claims

secured by a lien which is not crandown [sic] under 11 U.S.C. § 1322(b)(2)" and provided that

Class 2 claims would be paid in full.  (Confirmed Plan ¶¶ 4.B, 5.B.) (Bky. No. 04-10175, Doc. #

71).[6]  The Plan required payments of $445.00 for 49 months, totaling $21,805.00.

On July 31, 2009, the chapter 13 Trustee filed his Final Report, stating, *inter alia*, that he

had distributed the following amounts to the City pursuant to the Confirmed Plan:

- $10,000.00 secured claim for water/sewer

- $6,800.00 secured claim for a water/sewer

- $3,500.42 unsecured claim for water/sewer.

(Doc. # 127).

The relevant portion of the Final Report is below:

**Scheduled Creditors:**

| CreditorName | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| AMERICAN REALTY | UNS | 1,150.00 | 2,400.00 | 2,400.00 | 677.69 | 0.00 |
| CITY OF PHILA | SEC | 18,000.00 | NA | NA | 0.00 | 0.00 |
| CITY OF PHILA | SEC | 10,000.00 | NA | NA | 0.00 | 0.00 |
| CITY OF PHILA (WATER/SEWER) | SEC | NA | 10,000.00 | 10,000.00 | 10,000.00 | 0.00 |
| CITY OF PHILA (WATER/SEWER) | SEC | NA | 6,800.00 | 6,800.00 | 6,800.00 | 0.00 |
| CITY OF PHILA (WATER/SEWER) | UNS | NA | 12,396.97 | 12,396.97 | 3,500.42 | 0.00 |
| CITY OF PHILADELPHIA | SEC | 18,000.00 | NA | NA | 0.00 | 0.00 |
| COMPUTER CREDIT INC | UNS | 251.66 | NA | NA | 0.00 | 0.00 |
| PECO | UNS | 500.00 | NA | NA | 0.00 | 0.00 |
| PGW | UNS | 1,100.00 | 1,605.71 | 1,605.71 | 453.41 | 0.00 |
| T-MOBILE | UNS | 500.97 | 550.92 | 550.92 | 155.57 | 0.00 |
| US DEPT OF EDUCATION | UNS | 3,000.00 | NA | NA | 0.00 | 0.00 |
| VERIZON | UNS | 90.19 | NA | NA | 0.00 | 0.00 |
| WACHOVIA BANK | UNS | 400.00 | NA | NA | 0.00 | 0.00 |

---

[6]       The Confirmed Plan also provided that unsecured claims, placed into Class 3, would be
paid a *pro rata* share of any monthly payment amounts that remained after full payment of Class 1 and
Class 2 claims.  (Confirmed Plan ¶ 5.C.) (Bky. No. 04-10175, Doc. # 71).

The Debtor received his discharge on September 3, 2009.  The court closed the Debtor's

case on September 8, 2009, although it was reopened later to adjudicate the Prior Adversary

(resulting in the issuance of <u>Thomas I</u>).


## B.  The Prior Adversary

The Debtor first challenged the City's collection activities in the Prior Adversary.

On January 17, 2013, the Debtor filed the Prior Adversary *pro se* in District Court.  The

District Court subsequently referred the proceeding to this court.

In the Prior Adversary, the Debtor challenged the post-petition collection actions of the

City and other defendants, alleging violations of both the automatic stay and the confirmed

chapter 13 Plan.

The Debtor's complaints in the Prior Adversary were based solely on collection efforts

against the Ruby Street property.

The Debtor made the following four (4) assertions in the Prior Adversary:

> (1) the Philadelphia Authority for Industrial Development ("PAID") – to whom the
> City transferred a portfolio of delinquent assets – sold a tax bond on Ruby St. to
> Wachovia Bank in violation of the automatic stay;
>
> (2) the tax obligations that PAID sold to Wachovia were paid through the chapter 13
> plan;
>
> (3) Wachovia's filing a Sheriff Sale petition in November 2005 violated the
> automatic stay; and
>
> (4) Wachovia's post-discharge resumption of the Sheriff Sale petition was improper.

<u>See</u> <u>Thomas I</u>, 497 B.R. at 194.

For present purposes, we need only concern ourselves with the outcome of the Debtor's

claims against the City.

In <u>Thomas I</u>, I denied the Debtor's request for relief on two (2) independent grounds:

7

(1)  the Plan did not provide for Claim #5, secured by Ruby Street;[7] and

(2)  the City did not have notice of the plan prior to confirmation and therefore

was not bound by the Confirmed Plan.[8]

The Debtor appealed the September 25, 2013 Order dismissing the complaint in <u>Thomas</u>

<u>I</u>.  On October 23, 2013, the District Court dismissed his appeal due to procedural errors.  <u>See</u>

<u>Thomas v. City of Phila.</u>, No. 13-cv-6049 (E.D. Pa.).

---

[7]        <u>Thomas I</u>, 497 B.R. at 205 (citations omitted):

> Because the plan did not address the secured claim for the 1992–96 Taxes on the
> Ruby Street Property in any way, the controlling legal principle is that if a lien is
> not addressed and treated in some fashion during the course of a bankruptcy case
> — either by being provided for in a reorganization plan or avoided pursuant to a
> Code avoidance power  —  it passes through the bankruptcy case unaffected and
> that post-bankruptcy actions to enforce the lien do not violate any provision of
> the Bankruptcy Code.

[8]        <u>Thomas I</u>, 497 B.R. at 205–06 (some citations and footnote omitted):

> The rules of court require that a copy of the plan or a summary of the plan
> be served on all creditors along with the notice of the confirmation hearing. See
> Fed. R. Bankr.P. 3015(d). In this district, an extremely concise summary of the
> plan is included with the notice of the § 341 meeting of creditors. Furthermore, the
> local rules supplement this requirement by providing that the debtor must serve a
> copy of his or her initial chapter 13 plan and all pre-confirmation amended plans
> on all priority and secured creditors. <u>See</u> L.B.R. 3015–1(b) and 3015–2(a)(1).  .  .
> .

> It is well established that a prerequisite to the binding effect of a confirmed
> chapter 13 plan to the legal detriment of a creditor is dependent upon the creditor
> having received proper notice. <u>See, e.g.</u>, Keith M. Lundin & William H. Brown,
> <u>Chapter 13 Bankruptcy</u> § 233.1, ¶ 9 (4th ed. 2013) (www.Ch13 online.com) (citing
> authorities for the proposition that "the binding, vesting and free and clear effects
> of confirmation" have been limited when "notice of how the plan or confirmation
> process would affect creditors fell short of the notice required by the Rules or due
> process"). The "appropriate inquiry" is whether the creditor received notice
> reasonably calculated to apprise the creditor of the pendency of the plan and the
> opportunity to object to its confirmation.

> Based on these authorities, I conclude that the Confirmed Plan is not
> enforceable against the City for lack of notice.

### C.  The Debtor's Subsequent Action in District Court

Nearly two (2) years later, on July 8, 2015, the Debtor commenced a new action (which eventually became the Present Adversary) against the City in the District Court.

In the District Court action, the Debtor focused on the two (2) properties that were not involved in Thomas I: 1618 S. 58th and 1620 S. 58th.  The Debtor alleged that the City violated the discharge injunction by selling 1620 S. 58th and by collecting rents at 1618 S. 58th.

The District Court granted the Defendants' Motion to Dismiss, finding that *res judicata* applied, based on the findings made in Thomas I.  See Thomas v. City of Phila., 2016 WL 3625661, at *5 (E.D. Pa. July 7, 2016).

On appeal, the Third Circuit held that claim preclusion did not apply because the transaction or occurrence was not the same and the claim was not identical. The Court further held that issue preclusion did not apply because Thomas did not have a full and fair opportunity to litigate the issue of notice, an issue that was not essential to the prior judgment.  The Third Circuit vacated the 2016 District Court judgment and remanded the case to the District Court. See Thomas v. City of Phila., 682 F. App'x. 174, 176 (3d Cir. Mar 16, 2017).

After the remand, the District Court addressed the merits of the Debtor's complaint and found that the City violated the discharge injunction by seeking to collect taxes with regard to 1618 S. 58th when the underlying debts had been discharged in the Debtor's bankruptcy case and by attempting to sell 1620 S. 58th.  The Court awarded the Debtor $10,100 in damages, which was the sale price of 1620 S. 58th.  See Thomas v. City of Phila., 2017 WL 3593334 (E.D. Pa. Aug. 21, 2017).

The City appealed the District Court's judgment.

The Court of Appeals again reversed the District Court, holding that the District Court lacked subject matter to determine whether a violation of the discharge injunction occurred because jurisdiction over an alleged violation of the discharge order lies exclusively with the bankruptcy court. See Thomas v. City of Phila., 759 F. App'x. 110 (3d Cir. Jan. 3, 2019).

The Debtor unsuccessfully sought Supreme Court review.  See Thomas v. City of Phila., 139 S. Ct. 2703 (June 10, 2019).

On February 14, 2019, the District Court entered an order transferring the Debtor's civil action to this court, where it became the Present Adversary.

### D.  The Present Adversary

The Debtor filed the Complaint in the Present Adversary, acting *pro se*, on February 27, 2019.  (See Order entered March 13, 2019) (Adv. No. 19-43, Doc. # 9) (providing that the Debtor's Motion for Contempt would be treated as an Amended Complaint).

The Debtor seeks a remedy for the City's post-petition pursuit of delinquent property taxes (debts that accrued over a twenty (20) year period, from 1984-2015) and to hold the City in contempt for violating the discharge injunction.

### E.  The City's Post-Discharge Collection Actions

There is no dispute concerning the actions the City took post-bankruptcy against 1618 S. 58th and 1620 S. 58th.

On October 31, 2014, the City filed a Real Estate Tax Lien Petition in Court of Common Pleas, Philadelphia County, with respect to 1620 S. 58th.  Through this action, the City sought payment of real estate taxes for the years 1984 to 2013.  The petition included post-petition real

estate taxes for 2005 to 2013 in the amount of $11,024.67, and a total amount (including expenses) of $40,578.90.  (See Ex.'s X, Y to City's Motion).

The City effected a sheriff's sale of 1620 S. 58th on July 21, 2015 for the purchase price of $10,100.  The sheriff's deed was acknowledged on September 16, 2015 and recorded on September 30, 2015.  (See Ex. Z to City's Motion).

As for 1618 S. 58th, the City has twice initiated proceedings to effect a sheriff's sale of the property.  The City filed the first of the two (2) proceedings in 2015 at No. 1510T0588 (C.P. Phila.), in which the City sought payment of taxes for the periods 1984 to 2015.  The City discontinued this proceeding on April 7, 2016.  The City brought the second proceeding in 2018 at No. 1805T0284 (C.P. Phila.), seeking payment of post-petition real estate taxes for the periods 2005 to 2017 and unpaid post-petition water/sewer bills from cycles May 2004 to March 2018. This second proceeding was stayed on August 17, 2018.  (See Exs. EE, FF, GG, HH to City's Motion).

Neither collection action resulted in a sheriff's sale of 1618 S. 58th.  The property remains titled in the Debtor's name.


## III.  THE PARTIES' ARGUMENTS

In the Present Adversary, the Debtor seeks a determination that the City's collection actions – effecting a sheriff's sale the Debtor's property at 1620 S. 58th and attempting to effect a sheriff's sale of 1618 S. 58th – constituted contempt of the discharge injunction, 11 U.S.C. §524.

The City acknowledges that it had general knowledge of the Debtor's bankruptcy but asserts that in Thomas I, this court found that the Debtor's Plan was not binding on the City. While the argument is not stated expressly, it appears that the City asserts that because the Plan did not bind the City, its liens on the Properties passed through bankruptcy unaffected, leaving it

free to enforce its rights as lienholder under state law.[9]  The City also contends that it cannot be

held in contempt because it had an objectively reasonable basis to believe that its collection

actions were permissible.

The Debtor counters, without the benefit of supporting law or facts, that the Confirmed

Plan binds the City.  He also contends that the Bankruptcy Court can use its authority pursuant to

§105 of the Code to enforce the discharge injunction.

## IV.  APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

The legal standard for the entry of summary judgment under Fed. R. Civ. P. 56,

incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056, is well

established.  I have previously discussed this standard, including the proper application of the

burden of proof:

> . . . [S]ummary judgment must be granted to a moving party when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant.
>
> On a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. However, if it appears that the evidence is so one-sided that one party must prevail as a matter of law, the court shall enter judgment accordingly in that party's favor.
>
> Proper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens.
>
> If the moving party bears the burden of proof, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not

---

[9]      The City also argues that, for several reasons, any compensable damages should be limited, but those arguments are relevant only if the Debtor's is successful in holding the City liable..

controverted at trial. Evidence must establish all the essential elements of its case on which it bears the burden of proof at trial, [such that] no reasonable jury could find for the non-moving party. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial.

If the moving party does not bear the burden of proof at trial, the movant may establish it is entitled to judgment either by demonstrating that the undisputed facts negate an element of the plaintiff's claim or that the plaintiff lacks evidence to support an essential element of his claim.

Universal Mktg., Inc., 541 B.R 259, 279–80 (Bankr. E.D. Pa. 2015) (citations and quotations omitted).

In its Motion, the City contends that the Debtor's evidence is insufficient to permit this dispute to proceed to trial.  Therefore, the City's burden on summary judgment "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## B.  The Discharge Injunction and Civil Contempt

The Debtor alleges that the City's collection action against the 1618 S. 58th and 1620 S. 58th properties violated the discharge set forth by 11 U.S.C. §524(a) of the Bankruptcy Code.

Section 524(a)(2) provides, in relevant part, that a discharge "operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset any such debt as a personal liability of the debtor  . . . ."  This prohibition is known as the "discharge injunction."  The purpose of this statutory injunction "is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts."  In re Cook, 527 B.R. 607, 612 (Bankr. E.D. Pa. 2015).

The discharge provision of the Bankruptcy Code does not include an implied, private right of action. In re Joubert, 411 F.3d 452 (3d Cir. 2005). The discharge injunction is enforceable, however, through a contempt motion pursuant to 11 U.S.C. §105. See In re Meyers, 344 B.R. 61, 64-65 (Bankr. E.D. Pa. 2006); Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir. 2011).

Sanctions for civil contempt may be granted when three (3) elements have been established: (1) a valid order has been entered; (2) the person to be charged with contempt has actual knowledge of the order; and (3) the person has disobeyed the order. In re Foltz, 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005).

In the bankruptcy context, to hold a party in contempt for violation of the discharge injunction, a debtor must establish that: (1) a discharge order has been entered (discharging the debt); (2) the defendant had notice of the discharge order; and (3) collection efforts continued nevertheless. Cook, 527 B.R. at 610 n.3 (citing In re Englert, 495 B.R. 266, 271 (Bankr. W.D. Pa. 2013)); In re Meyers, 344 B.R. 61 (Bankr. E.D. Pa. 2006).

A recent Supreme Court decision has injected another issue into the contempt analysis under 11 U.S.C. §524.

In Taggart v. Lorenzen, 139 S. Ct. 1795 (2019), the Supreme Court imported the "fair ground of doubt" standard, (employed outside the bankruptcy context), into the §524 contempt determination:

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

Id. at 1799.  The Court explained that this standard reflects the severity of the civil contempt remedy and that basic fairness requires "explicit notice" of the specific outlawed conduct to those enjoined before being held in civil contempt.  Id. at 1802.

This is an objective standard; a party's subjective belief that it complied with an order will not insulate it from civil contempt if that belief was objectively unreasonable. Id. Nevertheless, a party's subjective intentions may play a role in the court's analysis.  A party's record of continuing and persistent violations will justify forcing the offending party to bear the burden of demonstrating any uncertainty in the judicial order.  Id.  On the other hand, a party's good faith may be a mitigating factor in the court's determination of appropriate sanctions.  Id. In sum, civil contempt "may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."  Id.

## V.  DISCUSSION

### A.  Introduction

Based on the record, there is no dispute that the court entered a discharge order and that the City was aware of it.  There also is no question that the City continued its collection efforts post-discharge by attempting to enforce its liens against the 1618 S. 58th and 1620 S. 58th properties.

To determine whether the City's conduct violated the discharge injunction and subjects the City to contempt sanctions, several issues must be considered.

Below is a list of those issues and my resolution of them:

- Did the Confirmed Plan provide for the stripping, payment and satisfaction of the City's liens on 1618 S. 58th and 1620 S. 58th?  **Yes.**

- If the liens were stripped, (and assuming that the City was bound by the Confirmed Plan), were the liens satisfied through the Debtor's completed, Confirmed Plan? **Yes, as to 1618 S. 58ᵗʰ.  No, as to 1620 S. 58ᵗʰ.**

- With respect to 1620 S. 58ᵗʰ, if its lien was not stripped, was the City entitled to enforce the lien after the entry of the discharge order?  **Yes.**

- With respect to 1618 S. 58ᵗʰ, assuming *arguendo* that the unsecured component of the City's prepetition claim was discharged, did the City attempt to collect the discharged debt after the entry of the discharge order? **Yes.**

- With respect to 1618 S. 58ᵗʰ, assuming *arguendo* that the City's collection efforts violated the discharge injunction, does the City have a defense to a finding of contempt on the ground that it was not bound by the terms of the Confirmed Plan?  **Yes.**

- With respect to 1618 S. 58ᵗʰ, assuming *arguendo* that the City's collection efforts violated the discharge injunction, does the City have a defense to a finding of contempt on the ground it had an objectively reasonable basis for concluding that its actions were lawful within the meaning of Taggart v. Lorenzen?  **Yes.**

### A.  Legal Principles Governing Lien Stripdown in Chapter 13

It well established law that a lien that is not addressed and treated in some fashion during the course of a bankruptcy case — either by being provided for in a reorganization plan, avoided pursuant to a Code avoidance power, or whose underlying debt is disallowed in whole or in part — passes through the bankruptcy case unaffected.  See, e.g., Cusato, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013) (citing authorities, including Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 189 (3d Cir.1987)).  This is because "a bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property."  In re Mansaray-Ruffin, 530 F.3d 230, 235 (3d Cir. 2008) (quoting Cen-Pen Corp. v. Hanson, 58 F.3d 89, 92 (4th Cir.1995)).  Accordingly, a secured creditor "may choose to ignore the bankruptcy proceeding and look to its lien for satisfaction of the debt."  In re Hill, 286 B.R. 612, 615 (Bankr. E.D. Pa. 2002).

16

To avoid a lien "riding through" a bankruptcy, the debtor must take some affirmative action to avoid the security interest attached to property of the estate.  <u>Mansaray-Ruffin</u>, 530 F.3d at 235.

In chapter 13, a debtor may use plan provisions to modify the rights of secured creditors, subject to certain limitations.  <u>See</u> 11 U.S.C. §§1322(b)(2), 1325(a).  Generally, this involves a multi-step process by which the debtor will (1) seek to value the collateral securing a creditor's claim, (2) bifurcate the claim into secured and unsecured portions under §506(a) (assuming the collateral is worth less than the claim it secures), and (3) use plan provisions to strip the lien down to the collateral's value, with that value to be paid in full through the plan.  <u>See</u> <u>Cusato</u>, 485 B.R. at 833-34.

If a debtor obtains judicial valuation of collateral securing a claim under §506(a) — and thereby bifurcates a creditor's claim into secured and unsecured components — §506(d) does not automatically strip the related lien down to the value of the collateral; the lien-voiding provision of §506(d) is not self-executing.  <u>See</u> <u>re Cusato</u>, 485 B.R. at 832 (collecting cases).  Thus, a debtor seeking to strip a lien to the value of the collateral must do so through plan provisions, <u>see</u> Fed. R. Bankr. P. 3012(b), or through a separate court order; §506(d) will not perform that work.[10]

---

[10]        After <u>Dewsnup</u>, most, but not all, courts have grounded the authority to strip an undersecured lien in a chapter 13 debtor's power to modify the rights of a secured creditor through the plan pursuant to § 1322(b)(2). Under this approach, strictly speaking, only the. confirmation of a plan that invokes § 506(a) and (d) to modify the rights of a secured creditor .  .  .  serves to strip a lien.

<u>Cusato</u>, 485 B.R. at 830 (collecting cases).

In the Debtor's bankruptcy case, there was no court order stripping the lien. The
Cramdown order was a claims allowance order, not a lien stripping order. Thus, any lien strip
down and payoff of the lien would have had to been accomplished through the Confirmed Plan.

For purposes of deciding the Motion, I will assume *arguendo*, that the Cramdown Order
in conjunction with the Confirmed Plan was designed to strip down the City's lien on 1618 S.
58th to $6,800.00 and the City's lien on 1620 S. 58th to $5,700.00.[11]   Of course, even with this
assumption, there is a question whether the City was bound by the terms of the Confirmed Plan –
a separate issue that I will address shortly.

## B.  The Effect of the Confirmed Plan on the City's Liens on 1618 S. 58th and 1620 S. 58th and the Legal Consequences of the Distribution Made by the Trustee

### 1.  the operative provision of the Confirmed Plan

The Confirmed Plan provided for the City's secured claims under Class 2. Secured
creditors in Class 2 would "retain their liens until their allowed [secured] claims are paid in full."
(See Confirmed Plan ¶ 4.B.) (Bky. No. 04-10175, Doc. # 71).[12]  Thus, the Confirmed Plan

---

[11]     This is a fair assumption.

The City acknowledges that it had notice of the Cramdown Motion and did not respond to it.
(See City Mem. at 2 & n.2) (Adv. No. 19-43, Doc. # 25). While the City was not served with the
Cramdown Order, I do not read the City's submission to contend that the Cramdown Order was
ineffective

With the Cramdown Order having determined the scope of the City's allowed secured claims, the
Confirmed Plan then provided for the holders of allowed secured claims (i.e., the City) to "retain their
liens until their allowed claims are paid in full." (See Confirmed Plan ( ¶ 4.B.) (Bky. No. 04-10175, Doc.
# 71). (There are two subparagraph "B.'s" in the Paragraph 4 of the Confirmed Plan. In the text, I am
referring to the second one).

[12]     Again, I amciting to the second ¶ 4.B. of the Confirmed Plan, see n. 11, supre.

18

expressly provided that each City lien would remain in place until the corresponding allowed secured claim was paid in full.

So, the next question is:  Did the Trustee pay in full the allowed claims secured by 1618 S. 58th and 1620 S. 58th?

### 2. the distribution under the Confirmed Plan

The Trustee's Final Report shows that the Trustee made two (2) distributions to the City on account of allowed secured claims.

One distribution, of $10,000.00, corresponds to Claim No. 5, filed by the Debtor on behalf of the City, as a claim secured by Ruby St.  As stated earlier, Ruby St. was the subject of Thomas I and the Debtor's claims against the City with respect to that property have been finally and conclusively resolved against him.  Therefore, the $10,000.00 distribution is irrelevant in the Present Adversary.

The other distribution, of $6,800.00 on account of secured claims, corresponds to the allowed claim secured by 1618 S. 58th.

### 3.  1620 S. 58th St: the City's liens survive

The Trustee's Final Report shows that the City did not receive any distribution from the Trustee on account of the $5,700.00 allowed claim, secured by 1620 S. 58th, as established by the Cramdown Order.[13]  As no payment was made on account of the City's allowed secured claim with respect to the 1620 S. 58th Property, the City retained its lien on the 1620 S. 58th Property.

---

[13]      It is likely that the Trustee made no payment on the City's claim secured by 1620 South 58th because no party filed a proof of claim for this debt.  While the Debtor took steps to bifurcate the claim into secured and unsecured components and strip its lien, he did not file a proof of claim that would have permitted the Trustee to distribute payments on account of the City's secured claim.

In short, by the express terms of the Confirmed Plan, the City's lien on 1620 S. 58th survived the Debtor's bankruptcy case.

It follows that no action the City took to enforce its liens against 1620 S. 58th violated the Debtor's rights because the statutory injunction in 11 U.S.C. §524(a)(2) prohibits only actions to collect a debt "as a personal liability of the debtor."

As I stated in <u>Cusato</u>:

> A secured creditor's demand for payment as a condition of satisfying a valid lien on property is not an act to collect a debt "as a personal liability of the debtor" prohibited by § 524(a)(2). This is because valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt. Secured creditors are not prevented from postdischarge enforcement of a valid lien on property of the debtor if the lien was not avoided under the Code.

485 B.R. at 828 (quotations and citations omitted).


### 4.  1618 S. 58th: the Confirmed Plan and distribution purported to satisfy the City's prepetition lien

The analysis with respect to 1618 S. 58th is more complicated.

The Cramdown Order determined that the City's allowed claim secured by this property was $6,800.00 and the Trustee's Final Report states that the allowed secured claim was paid in full.  By the terms of the Confirmed Plan, the City retained no prepetition lien.

The Trustee's Final Report also shows that he distributed $3,500.42 on account of an unsecured claim held by the City, possibly the Class 4 unsecured claim arising from the Cramdown Order bifurcating the claim secured by 1618 S. 58th St.  In any event, that payment was less than the bifurcated $11,200.00 unsecured claim. Consequently, the unsecured, prepetition claim the City, allowed in the amount of $11,200.00, <u>see</u> n.6, <u>supra</u>, potentially was discharged to the extent that it was not paid by the Trustee's distributions under the Confirmed Plan.

There is no question that the City's collection actions with respect to 1618 S. 58th

included attempts to collect prepetition debt associated with the property.  As stated in Part II.E.,

supra, in the action filed at No. 1510T0588 (C.P. Phila.), the City sought payment of unpaid

taxes for prepetition periods going back to 1984.  Thus, if the prepetition lien on 1618 S. 58th was

satisfied and the prepetition unsecured debt related to the property was discharged, the City's

post-bankruptcy collection efforts to collect prepetition real estate taxes owed on 1618 S. 58th

violated the discharge injunction.

For purposes of resolving the Motion, I will assume *arguendo* that this prepetition debt

was discharged and that the City's collection efforts were inconsistent with the discharge

injunction as to 1618 S. 58th.[14]

With that assumption in place, I next consider two (2) defenses raised by the City: (1) it

was not bound by the Confirmed Plan and therefore, its prepetition liens were not extinguished;

and (2) the City cannot be held in contempt because it had an objectively reasonable basis to

believe that its collection actions were permissible.

As explained below, I find both defenses meritorious.

### C.  The City Was Not Bound by the Confirmed Plan

As explained below, I conclude, as I did in Thomas I, that the City was not bound by the

Confirmed Plan because it did not receive adequate notice of the plan provisions prior to

confirmation.  Therefore, the Confirmed Plan was ineffective in stripping the City's liens on the

---

[14]      Without deciding the issue, the assumption is a reasonable one.  See 11 U.S.C. §523(a)(1)(A)
(debts of the kind and for the periods specified in §507(a)(8) are nondischargeable); 11 U.S.C.
§507(a)(8)(B) (referring to property taxes incurred prepetition and last payable without penalty "after one
year before the date of the filing of the [bankruptcy] petition.")

1618 S. 58th property and the City's post-bankruptcy collection action against the property to

enforce its prepetition liens for unpaid real estate taxes, like its lien enforcement collection

actions against 1620 S. 58th, did not violate the Debtor's rights under the Bankruptcy Code.

The Bankruptcy Code provides that the provisions of a confirmed chapter 13 plan bind

debtors and creditors alike.  See 11 U.S.C. §1327(a).  A confirmed plan binds parties regardless

of whether a creditor has objected to, accepted, or rejected the plan.  Id.  Accordingly, "a

confirmation order is *res judicata* as to all issues decided or which could have been decided at

the hearing on confirmation."  In re Szostek, 886 F.2d 1405 (3d Cir. 1989).

For a plan to bind a creditor, the creditor must have proper notice of the plan's provisions

prior to confirmation.  See Thomas I, 497 B.R. at 205 (Bankr. E.D. Pa. 2013) (citing Keith M.

Lundin & William H. Brown, *Chapter 13 Bankruptcy* §233.1, ¶ 9 (4th ed. 2013)

(www.Ch13online.com)).

Deficiencies in service of process can implicate deprivation of two distinct notice-based

rights: those afforded to creditors by the Bankruptcy Rules, and a creditor's constitutional right

to due process.  See U.S. Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010).

Courts will not enforce a chapter 13 confirmation order if doing so denies a party its due

process rights.  In re Mansaray-Ruffin, 530 F.3d 230, 238-39 (3d Cir.2008).[15]  In other words,

lack of due process will directly impact the preclusive effect (application of *res judicata*) of a

confirmed plan.  As one court explained:

> A confirmed plan has no preclusive effect on issues that . . . were not sufficiently
> evidenced in a plan to provide adequate notice to the creditor.  These limitations on

---

[15]    The Third Circuit has recognized that Espinosa may have overruled Mansaray-Ruffin
insofar as it held that the Bankruptcy Rules establish due process rights that can trump finality.  See In re
Semcrude, L.P., 728 F.3d 314, 323 (3d Cir. 2013).  Nevertheless, as I have previously written, "the more
fundamental principle articulated in Mansaray-Ruffin — that a confirmation order entered without due
process is unenforceable — was not questioned in Espinosa and remains good law."  See Thomas I,497
B.R. at 206 n.33.

the application of <u>res judicata</u> are particularly apropos when secured claims are involved because liens ordinarily pass through bankruptcy unaffected . . . .

<u>In re Nomellini</u>, 577 B.R. 851, 856–57 (N.D. Cal. 2017) (citations and quotations omitted).

Due process within the plan confirmation context can be satisfied one (1) of two (2) ways: either a creditor receives actual notice of the plan's proposed treatment of its interests or a debtor provides a creditor with "notice reasonably calculated, under all the circumstances, to apprise [a creditor] of the pendency of the action and afford [it] an opportunity to present [its] objections." <u>Espinosa</u>, 559 U.S. at 272.  Thus, constitutional due process can be satisfied even where a debtor failed to serve a creditor in accordance with the Bankruptcy Rules.  <u>See</u> <u>In re AMF Bowling Worldwide</u>, 2013 WL 5575470, at *5 (Bankr. E.D. Va. Oct. 9, 2013) ("[S]ervice under Rule 7004 of the Federal Rules of Bankruptcy Procedure is not constitutionally mandated").

Cases resolving issues related to due process in the context of confirmed plans generally turn on the type of notice the creditors received regarding the debtors' proposed treatment of the creditors' interests.

In <u>In re Losoda</u>, 557 B.R. 244, 249 (Bankr. S.D. Fla. 2016), the debtors only provided the objecting secured creditor with the debtors' initial chapter 13 plan.  This initial plan indicated that the debtors would file a motion to value the collateral securing the creditor's claim but did not specify an alleged value of the collateral.  <u>Id.</u> at 250.  A subsequent amended plan, that was not served on the creditor, specified a value for the collateral and was confirmed.  The court held that the secured creditor was not bound by the valuation specified in the confirmed plan for lack of notice.  <u>Id.</u>

Similarly, in <u>In re Erdmann</u>, 446 B.R. 861, 866 (Bankr. N.D. Ill. 2011), a debtor filed a plan modification that reclassified a secured claim as wholly unsecured.  The filing of this modified plan triggered automatic email notices to the U.S. Trustee, the case trustee, and all

parties who filed documents in the case.  Id.  For technical reasons, the affected secured creditor

did not receive this automatic notice.  Id.   One (1) day after the modified plan was approved, the

Bankruptcy Noticing Center mailed out written notices of the modified plan to all creditors,

including the secured creditor whose claim was reclassified.  Id.  The secured creditor filed a

motion to vacate the confirmation order.  In granting the motion to vacate, the court observed

that "[w]ithout the opportunity to object . . . the confirmation order cannot bind the creditor as to

that particular term."  Id.

Other courts have reached similar conclusions where creditors did not receive adequate

notice of proposed plan provisions prior to confirmation.  See In re Pongco, 614 B.R. 690, 696-

97 (Bankr. D. Alaska 2019) (evidence of mailing did not show that the creditor had actual

knowledge of the plan's provisions prior to confirmation); In re Gonzalez, 2013 WL 1197666

(Bankr. D.N.J. Mar. 25, 2013) (finding a due process violation where the debtor served the plan

on a commercial creditor, by regular mail to a non-officer, because the notice was not reasonably

calculated to apprise the creditor of the hearing in time to respond); see also Jacobo v. BAC

Home Loans Servicing, LP, 477 B.R. 533, 540-41 (D.N.J. 2012) (same); cf. In re Menden, 2011

WL 4433621 (Bankr. N.D. Ohio 2011) (failure to serve an amended plan on creditor in accord

with Bankruptcy Rules did not violate the creditor's due process rights where the creditor's

attorney received electronic notice of the amended plan).

Applying these principles in this case, I have no trouble — again — concluding that the

City was not bound by the Confirmed Plan due to lack of notice.  See Thomas I, 497 B.R. at

205-06.

The Debtor did not satisfy the City's due process rights as it pertains to the Confirmed

Plan. While the Debtor referenced several filings that were served on the City during his

bankruptcy case  (the  notice of the scheduled 341 meeting, the order scheduling the

confirmation hearing for his Third Amended Plan , the order confirming his Third Amended

Plan, the Trustee's Final Report  and the order of discharge)[16] none of these documents

contained the plan provisions that would have alerted the City that its rights would be altered by

confirmation of the plan.  Rather, it is undisputed that Thomas did not serve the City with any of

his proposed chapter 13 plans prior to confirmation.

The Debtor makes one point that gives me some, slight pause — that prior to the

confirmation hearing, the City arguably had some notice that Thomas intended to strip the liens

from the Properties.

The Debtor did serve the City with the Debtor's Cramdown Motion.  (See Debtor's Cert.

of Service) (Bky. No. 04-10175, Doc. # 46).  It is also true that the City was given notice of the

hearing at which the Debtor's plan was confirmed.  (Bky. Noticing Center Cert. of Service, Jan.

13, 2005) (Bky. No. 04-10175, (Doc. # 88).  Thus, having received notice of an upcoming

confirmation hearing, the City could (and maybe should have) have taken steps to ascertain what

was in the proposed plan.

On the other hand, the Debtor served the Cramdown Motion on the City at the

municipalities most general address — the Municipal Services Building — rather than by

directing it to the City's Law Department.  And, the City did not receive notice of the entry of

the subsequent Cramdown Order.

Taking all of these factors into account, I conclude that whatever broad notice the City

possessed was insufficient to satisfy the City's due process rights.

I have not found any reported case in which a bankruptcy court has held that general

knowledge of the existence of a bankruptcy case, or notice of the confirmation hearing, is a

permissible substitute for service of the chapter 13 plan (i.e., actual notice that a debtor intends to

---

[16]      (See Bky. No. 04-1015, (Doc. # 11, 88, 94, 128 130)

alter a secured creditor's rights in the plan).  In the circumstances here, where the secured

creditor was known to the debtor and readily available for service, such a finding would be

particularly inappropriate.

To hold otherwise would be to create an affirmative monitoring duty on a secured

creditor, whose *in rem* property rights ordinarily pass through bankruptcy unaffected — rather

than compelling a debtor to take active steps to provide notice to a secured creditor whose lien

rights the debtor seeks to impair in the bankruptcy case.  Finding constructive notice adequate

here would functionally impose a burden on a secured creditor to monitor the docket for any

unserved filings that may affect its interests.  No case has even hinted that such a holding is

warranted.  Indeed, arguably, the burden on the debtor to satisfy due process concerns is

heightened when secured claims are involved because a creditor's liens usually pass through

bankruptcy.  See Nomellini, 577 B.R. at 856-57.

Moreover, provision of notice in this case would have been simple.  The Debtor knew the

City was a secured creditor and had an obligation under the Local Bankruptcy Rules 3015-1(b)

and 3015-2(a)(1) to serve a copy of his proposed plans on the City.  He did not meet that

obligation to satisfy the City's due process rights, thus the Confirmed Plan is not binding the

City.

Having found the City was not bound by the Confirmed Plan, it is a foregone conclusion

that the City was not stripped of its lien on the 1618 S. 58th Property when the debtor completed

plan payments.  Accordingly, the City's collection activities with respect to the 1618 S. 58th did

not violate the discharge injunction.

### D.  The City's Conduct Was Objectively Reasonable

Assuming, *arguendo,* that the City was bound by the Confirmed Plan and, consequently its collection activities violated the discharge injunction, the City still is not subject to being held in contempt.  This is because City had an objectively reasonable basis for concluding that its collection activities were lawful based on this court's holding in Thomas I.  This insulates the City from liability under legal standard enunciated in Taggart v. Lorenzen.

In resolving the Prior Adversary, this court held in Thomas I that "the Confirmed Plan is not enforceable against the City for lack of notice."  Thomas I, 497 B.R. at 205-06.  Armed with this judicial finding, which became final in December 2013 following the dismissal of the Debtor's appeal in district court, the City thereafter began its collection actions.

The Debtor asserts that the City's reliance on this court's final order was not reasonable. I disagree.

It is hard to imagine a more objectively reasonable basis for the City's conduct than a prior judicial determination that its lien rights were not impaired by the Debtor's bankruptcy. While the Court of Appeals later concluded that this court's findings were not binding on the Debtor for purposes of *res judicata*, the Court of Appeals did not decide the merits of the issue. The court did not hold that the Confirmed Plan was binding on the City; it held only that the Debtor had not yet had a full opportunity to be heard on the issue.

The fact is that City had a final judicial determination that supported its position that it was not bound by the Confirmed Plan. And, even after the Court of Appeals decision, the City had an objectively reasonable basis for believing that it was entitled to enforce its liens against 1618 S. 58th without violating the Debtor's bankruptcy rights.  Indeed, now that the Debtor has had his opportunity to be heard on the issue, I have upheld the City's position that it was not bound by the Confirmed Plan.

# V.  CONCLUSION

For the reasons stated in this Memorandum, I conclude that the City has established that it is entitled to judgment as a matter of law on the Debtor's claim that it violated the discharge injunction in the Debtor's bankruptcy and therefore, should be held in contempt of the discharge injunction.[17]

The City's Motion will be granted, and judgment will be entered in favor of the City.[18]

Date: **March 25, 2021**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

cc:  Milton Thomas (via e-mail to Lawman728@gmail.com)

---

[17]     In the Complaint, the Debtor also requested that the court issue an injunction prohibiting further collection actions by the City.  In light of my conclusion that, with respect to 1620 S. 58th, , the City's liens were not extinguished based on the terms of the Confirmed Plan itself, the Debtor is not entitled to restrain the City's collection actions.  Further, in light of my conclusion, that the City was not bound by the Confirmed Plan, the City is entitled to enforce its liens against both properties.  The Debtor is not entitled to injunctive relief.

[18]     This adversary proceeding falls within the court's core subject matter jurisdiction because it is based on rights explicitly provided in the Bankruptcy Code: the discharge injunction in 11 U.S.C. § 524(a)(2).  See 28 U.S.C. § 157(b)(2)(O); Matter of National Gypsum Co., 118 F.3d 1056, 1063 (5th Cir.1997); In re Kalabat, 592 B.R. 134, 137 (Bankr. E.D. Mich. 2018); In re Conseco, Inc., 330 B.R. 673, 681–82 (Bankr. N.D. Ill. 2005).